# Frederickson v. Tax Payers Co-Operative Co.

March 24, 1939.

King Swope, Judge.

J. A. EDGE for appellant.

ROBERT RIVES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

The appellant and defendant below, N. C. Frederickson, as trustee for H. A. Snyder, held title to some real estate in the city of Lexington, Kentucky, which was taxable for the fiscal year of 1932, and which was assessed for municipal taxes for that year, amounting in all, with statutory additions, to $66.25. It was not paid or offered to be paid at any time thereafter by either the trustee or the cestui qui trust. On October 27, 1932, the trustee made written application to the appellee and plaintiff below, Tax Payers Co-Operative Company, a corporation doing business in the city of Lexington, to pay the amount of the tax with the statutory accumulations to that date amounting to the total sum stated, and which application was accepted and the amount due was thereafter paid by plaintiff— all of which was done pursuant to section 1 of chapter 150 of the session acts of 1930, which is section 4168a in Baldwin's 1936 Revision of Carroll's Kentucky Statutes, and the subsequent sections to and including 4168k are the same as the eleven sections of the 1930 act.

When the taxes were so paid by plaintiff there was issued to it by the collector the "certificate of

transfer" incorporated as a part of section 4168a, which is section 1 of the act. The other sections of that statute were substantially pursued and this action was filed by plaintiff against defendant seeking reimbursement for the amount it had paid as taxes for defendant, and to enforce a lien upon the trust property which the 1930 act preserved in favor of such a tax payer. Various defenses were interposed, among which were (a) the denial of the right of plaintiff to recover some of the statutory penalties which the city could have enforced if it had sought to enforce its lien; (b) certain small credits, amounting in the aggregate to about $10, were pleaded as an offset to the amount sought to be recovered, and (c) certain alleged irregularities and departures from statutory requirements and ordinance requirements imposing the involved taxes, and in assessing the property for taxation.

The court referred the case to its commissioner, who took proof and reported his findings, and in which he denied the right of plaintiff to recover some of the contested penalties that might have been collectible by the city, and he allowed the credits contended for by defendant and recommended the rendition of judgment in favor of plaintiff for the sum of $66.25, with interest, from October 29, 1932, subject to a credit of $9.49. He disallowed any of the alleged illegalities and irregularities concerning the ordinance under which the tax was levied—relating to its assessment—and other steps taken; but whether he found that no such grounds existed, or that defendant was estopped from relying on any such grounds, does not clearly appear from his report. It is our opinion from reading the testimony heard before the commissioner—which was made a part of the record—that no such defeating grounds for the collection of the taxes were established, but in order to demonstrate that conclusion a more or less tedious investigation of the various statutes applicable to the question would be required, and for the reasons soon to be stated the determination of those contentions and defenses need not be made. Therefore, and because of such non-necessity, the task will not be undertaken.

Section 4168j of the same revision of our statutes—and which is section 10 of the 1930 act—says: "Whenever any person shall request that a certificate of transfer be issued to a third party, transferring a tax on a

property in which he is financially interested, said person, his heirs and assigns shall thereafter be estopped from claiming any irregularity in said tax, or any proceedings relating thereto up to the point of transfer, and such a request shall, insofar as he has the power to do so, ratify all the proceedings in regard to such tax up to that said point."

The validity of the 1930 act is not attacked upon any ground whatever, and therefore the right and authority of the legislature to enact it is, at least, impliedly admitted. But were it otherwise, we are unable to discover in our constitution any provision forbidding in any manner the legislature to enact into law the provisions contained in the statute. After all, it does no more than to provide a method whereby a disinterested third party may upon the request of a tax payer satisfy and pay the tax to the proper taxing authority, and to be substituted to the lien of the latter given by the statutes for reimbursement and as security to the payer (disinterested third party) for the amount he paid, and at the same time conferring upon him the right to collect the statutory interest due from the tax payer and to enforce his lien for the aggregate amount.

The making of provisions for the collection and payment of taxes is preeminently within the power and authority of the legislature, and unless it transgresses some provision in the fundamental law of the sovereignty for which it acts there can be no room for the entertainment of the proposition that it acted without authority. The fruits of the particular statute involved are two-fold: (1) It enables the tax payer to obtain a respite and to defer the final day of enforced collection by the taxing authority—with its more or less exorbitant additions in the way of penalties, etc., and (2) it confers upon a stranger the right to relieve the tax payer by paying his taxes if requested by him, and also preserves the lien of the taxing authority in his favor —none of which was permissible before the enactment of the statute. The effect of such a transaction before the enactment of the statute would have been a mere borrowing from the stranger by the taxpayer of the amount of money necessary to discharge the tax, and when done by such stranger—without the rights conferred by the statute—the lien for the taxes would be

extinguished and no longer exist in favor of anyone. We, therefore, conclude that the statute is not only valid, but its purpose was wise and beneficial to all parties concerned.

The Legislature said in substance, to the tax payer by the enactment of the inserted section 4168j (section 10 of the act): "If you take advantage of the provisions of this statute and procure a stranger to satisfy your tax under its terms, whereby you obtain the benefits of postponement of enforcement proceedings available to the taxing authority, then you shall be estopped 'from claiming any irregularity in said tax, or any proceedings relating thereto up to the point of transfer' (made by the collecting officer to the stranger when the tax is paid), and such an application and request on your part shall amount to a ratification of all prior proceedings up to the point of the transfer."

There is no inhibition in the constitution, nor in any element of unfairness or injustice forbidding such a requirement. The estopping condition so imposed upon the tax payer is created by his own voluntary act, since there is nothing in the statute compelling him to seek the discharge of his past due tax in the manner provided by the statute—it, as we have pointed out, creating only a method of relief which is altogether optional with the tax payer. Therefore, all of the ponderous argument of counsel for appellant in his brief is of no materiality whatever. Hence our conclusion that the record is entirely barren of any ground for a reversal of the judgment.

Plaintiff does not by cross appeal, or otherwise, question the rulings of the court, and the findings of the commissioner against it, and for which reason none of those questions will be discussed. Wherefore, for the reasons stated, the judgment is affirmed.